UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

RANID GAMMO,

       Defendant.

_____/

Case No. 01-81015

District Judge George Caram Steeh
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER GRANTING
MOTION TO QUASH SUBPOENA**

This is a criminal case. As part of his sentence, Defendant Ranid S. Gammo, who is currently on supervised release status, was ordered to pay $202,850.83 in restitution. He has been making payments in the amount of $50 per month. In order to determine whether Defendant has the ability to make more substantial payments, the government issued subpoenas to Jeffrey Gammo (the Defendant's nephew) and Reyad Gammo (the Defendant's brother), commanding them to appear at a deposition and to produce personal financial information. Before the Court are Jeffrey's and Reyad's motions to quash the subpoenas [Docket Nos. 25 and 26], which have been referred for hearing and determination pursuant to 28 U.S.C. §636(b)(1)(A).

**I.   FACTS**

Defendant was sentenced in 2003 to a term of 18 months imprisonment, followed by three years of supervised release. He was also ordered to pay restitution in the amount of $202,850.83. At the time of sentencing, Defendant's nephew Jeffrey Gammo, then a young man of 18 or 19, was living with him and apparently being supported by him. However, counsel stated at oral argument that Jeffrey has not lived with the Defendant since April of 2003 (T. 7).[1] The government claims, on information and belief, that in February, 2003, the Defendant signed a lease for a 2003 Saab that was driven by Jeffrey, and that in February, 2002, Defendant leased a 2000 Isuzu Trooper that was driven by his brother Reyad.

Defendant Ranid Gammo has submitted an affidavit stating that although he and his wife at one time contributed to the financial support of Jeffrey, they have not done so since April, 2003. Defendant also states that he does not support his brother, Reyad Gammo, in any way. Neither Jeffrey nor Reyad were defendants or otherwise involved with the underlying criminal offense of which Ranid was convicted.

The government issued subpoenas to Jeffrey and Reyad, along with a "List of Documents to Bring to Deposition." The list is quite comprehensive, and relates to Jeffrey's and Reyad's personal finances, including earnings statements; bank statements, deeds and other documents relating to real estate; stocks, bonds and securities; titles to motor vehicles; life insurance information; financial or profit and loss statements; all expenses, such as

---

[1] "T" refers to the transcript of oral argument on March 14, 2006.

installment debts, food, utilities and other living expenses; pension, retirement or profit-sharing plans; and local, state and federal income tax returns for the past three years. In support of its request, the government argues as follows:

> "The United States alleges that there is sufficient financial involvement to require both Jeffrey and Reyad to appear for deposition and to complete financial information statements. This information is both relevant and necessary to determine whether Defendant is making good faith attempts to pay his restitution or is merely taking on additional unwarranted family responsibilities at the expense of his victim." *Government's Response*, p. 3.

Jeffrey and Reyad Gammo have moved to quash their subpoenas on the grounds of relevance and overbreadth.

## II.   ANALYSIS

Under 18 U.S.C. §3664(f)(2)(A), (B) and ( C ), the court considers the financial assets and resources of *the defendant* in setting the terms of restitution, including whether the assets are jointly controlled, and also considers the financial obligations of *the defendant*, including obligations to dependents. Thus, the government would be well within its rights to conduct a debtor's examination of the Defendant himself. However, at oral argument on this Motion, the government indicated that it had not yet done so (Tr. 10). Likewise, information about whom, if anyone, Defendant claimed as dependents could be determined from his own tax returns. Again, however, the government had not obtained those returns as of the date of oral argument (Tr. 11).

Instead, the government issued two third-party subpoenas to the Defendant's relatives. When asked at oral argument about the breadth of the document requests, the government

stated that "[w]hen we issue our subpoenas, we try to make them as broad as possible, and then we recognize that many times defendants and/or third parties will have questions and/or defenses to documents that are...being asked for." (Tr. 11). Counsel for the government also offered the following generalization about criminal defendants and their families:

> "[I]n our–in my dealings with defendants in the past, their–their representations of their financial affairs and their financial affairs with their family members are subject to change every time we ask them a question. This is why when we do include third-party family members in a review of their financial affairs, we try to make our request as broad as possible....Again, because of the nature of the defendants and their willingness to cloud the issue with respect to their assets and their liabilities, I believe that I have an obligation with respect to family members to be as encompassing as possible to determine what the financial relationships are between close family members" (Tr. 12).

Under Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv), the court *shall*, on timely motion, quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies," or if it "subjects a person to undue burden." In addition, a "person from whom discovery is sought" may seek a protective order under Fed.R.Civ.P. 26 ( c ) where it is necessary "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." All discovery is subject to the limitations of Rule 26(b)(2), which also speak to burden and expense. Where confidential documents such as tax returns are sought, a subpoena issued to a third party, rather than the defendant, is given careful scrutiny. *See United States v. Monumental Life Insurance Company*, 440 F.3d 729, 735-36 (6th Cir. 2006).

In this case, the government asks for too much, too soon. The salient question is the

Defendant's financial status, including any relevant financial entanglements with relatives, in 2006, not in 2002 or 2003. The government has presented nothing of substance to counter the Defendant's affidavit that while he may have supported his nephew in years past, he has no current financial ties to Jeffrey or Reyad. The government has therefore failed to show the relevance of the third-party documents it seeks. While the government has the right to inquire into the *Defendant's* present financial circumstances, through a debtor's examination or a request for his own tax records, it has not done so. If and when it does, it may be able to produce some concrete information supporting further inquiry into the financial situation of Defendant's family members, but at this time, the government has nothing to support its request except vague generalizations about the supposed duplicity of criminal defendants and their families.

In addition, the government's subpoenas for documents are exceedingly broad, covering virtually every aspect of Jeffrey's and Reyad's personal finances, including confidential tax returns. Invalidating an IRS summons issued under 26 U.S.C. §7602, the Fourth Circuit in *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973), stated:

> "A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought....The Government cannot go on a 'fishing expedition' through appellant's records, ... and where it appears that the purpose of the summons is 'a rambling exploration' of a third party's files, it will not be enforced." (Citations omitted).

By its own admission ("we try to make [the subpoenas] as broad as possible"), the government is on no less of a fishing trip in the present case.

Finally, while it might be theoretically possible to narrow and modify the document

requests, it would be difficult for the Court to undertake that task, given that as framed, the subpoenas ask for virtually everything.  If a debtor's examination of the Defendant were to reveal a relevant financial connection to Jeffrey or Reyad, and if the document requests were appropriately narrowed in scope, the Court might be willing to revisit the issue, but as it stands, the Motions to Quash Subpoenas [Docket #25 and #26] will be GRANTED.

      SO ORDERED.

                                            S/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Dated:  April 25, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 25, 2006.

                                            S/Gina Wilson
                                            Judicial Assistant